J. Devlan Geddes
Cameron T. Clevidence
**GOETZ, GEDDES & GARDNER, P.C.**
35 N. Grand Ave.
P.O. Box 6580
Bozeman, MT 59771
devlan@goetzlawfirm.com
cclevidence@goetzlawfirm.com

John Heenan
**HEENAN & COOK**
1631 Zimmerman Trail
Billings, MT 59102
(406) 839-9091
john@lawmontana.com

Raph Graybill
Rachel Parker
**GRAYBILL LAW FIRM, P.C.**
300 4th Street North
Great Falls, MT 59403
(406) 452-8566
raph@graybilllawfirm.com
rachel@graybilllawfirm.com

David R. Paoli
**PAOLI LAW FIRM, PC**
257 West Front St. Ste. A
Missoula, MT 59802
(406) 542-3330
davidpaoli@paoli-law.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA, GREAT FALLS DIVISION

| | |
|---|---|
| ALEXIS JACKSON, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> HEALTH CARE SERVICE CORPORATION dba BLUE CROSS BLUE SHIELD OF MONTANA, INC., and JOHN DOES 1-10. <br><br> Defendants. | Cause No: CV-25-99-GF-JTJ <br><br><br> **CLASS ACTION COMPLAINT** <br><br> **and** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Alexis Jackson ("Plaintiff") brings this Class Action Complaint ("Complaint") against Defendant Health Care Service Corporation dba Blue Cross Blue Shield of Montana ("Defendant"), in her individual capacity and on behalf of all others similarly situated (the "Class" or "Class Members" (as defined below)), and alleges upon personal knowledge as to her own actions and her counsels' investigations, and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1. Plaintiff brings this class action lawsuit against Defendant for its failure to adequately secure and safeguard Plaintiff's and Class Members' highly confidential personally identifiable information ("PII") and protected health information ("PHI"), including their names, social security numbers, birth dates and medical service details—including treatment and diagnosis codes, provider names and claim amounts (collectively, "Private Information"), resulting in a massive and preventable data breach.[1]

2. Defendant is a health insurance provider. As such, it knowingly obtains sensitive insured information and has a resulting duty to securely maintain such information in confidence. As Defendant is or should have been aware, this type of personal and sensitive data is highly targeted and sought after by hackers who seek to exploit that data for nefarious purposes. In the wrong hands, these

---

[1] *See* https://helenair.com/news/state-regional/government-politics/article_c4c53a37-6380-478b-a002-2b813ae45b87.html#tracking-source=home-top-story.

types of sensitive data may be wielded to cause significant harm to individuals including Plaintiff and the Class Members.

3.    Defendant received Plaintiff's and Class Members' Private Information during its provision of insurance services to Plaintiff and Class Members.

4.    In obtaining, collecting, using, and deriving a benefit from the Private Information of Plaintiff and Class Members, Defendant assumed legal and equitable duties to those individuals to protect and safeguard their Private Information from unauthorized access and intrusion, including the manner in which Defendant entrusted this information to third-parties.

5.    In October 2025, Defendant filed a notice with the Montana Commissioner of Securities and Insurance (or "Auditor") that hundreds of thousands of its current and former Montana customers were victims of a data breach.

6.    Defendant disclosed that it learned of the breach in early 2025, but did not notify the Auditor until October.

7.    The breach occurred through Defendant's third-party vendor, and lasted from October 2024 through January 2025.

8.    Upon information and belief, Defendant only recently notified victims of the Data Breach.

9.    According to public report, the Private Information at issue was stolen by criminal threat actors.[2]

10.    The Private Information was compromised and stolen due to Defendant's negligent and/or careless acts and omissions and its utter failure to protect its insureds' sensitive data. Hackers targeted and obtained Plaintiff's and Class Members' Private Information because of its value in exploiting and stealing the identities of Plaintiff and Class Members. The present and continuing risk to victims of the Data Breach will remain for their respective lifetimes.

11.    Plaintiff brings this action on behalf of all persons whose Private Information was compromised as a result of Defendant's failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendant's inadequate information security practices; and (iii) effectively secure Plaintiff's protected Private Information when sharing it with third parties by using reasonable and effective security procedures free of vulnerabilities and incidents. Defendant's conduct amounts to negligence and violates state and federal statutes.

12.    Defendant disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to implement and maintain adequate and reasonable measures to ensure that the Private Information

---

[2] https://www.cybersecuritydive.com/news/conduent-breach-significant-number/745963/.

of Plaintiff and Class Members was safeguarded when being shared with third-parties, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the protection of sensitive data. As a result, the Private Information of Plaintiff and Class Members was compromised through disclosure.

13.    Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they are entitled to injunctive and other equitable relief.

14.    Plaintiff and Class Members have suffered injury as a result of Defendant's conduct. These injuries include: (i) invasion of privacy; (ii) lost or diminished value of Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) an increase in spam calls, texts, and/or emails; and (vi) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information. Plaintiff seeks to remedy these harms and prevent any future data compromise on behalf of herself and all similarly situated persons whose Private Information was

compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices.

## PARTIES

15.    Plaintiff Alexis Jackson is a resident and citizen of Great Falls, Montana.

16.    Plaintiff was insured by Blue Cross Blue Shield of Montana at all times relevant to the Breach.

17.    Defendant Health Care Service Corporation is an Illinois corporation doing business in Montana under the assumed name Blue Cross Blue Shield of Montana, and for which it operates a state headquarters at 3645 S Alice St, Helena, MT 59601.

## JURISDICTION & VENUE

18.    The Court has jurisdiction over the parties and the subject matter of this action. Jurisdiction is proper because Plaintiff is a citizen of Montana and Defendant is an insurer operating and licensed in Montana.

19.    Venue is appropriate pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) and Local Rule of Procedure 3.2.

## FACTUAL ALLEGATIONS

### A. Background.

20.    Defendant provides insurance services and products.

21.    In the course of administering these services/selling these products, Defendant receives and handles customers' PII and PHI.

22.    By generating, obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII and PHI, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII and PHI from disclosure.

23.    Plaintiff provided her Private Information to Defendant in connection with services she received from Defendant.

24.    The information held by Defendant in its computer systems at the time of the Data Breach included the Private Information of Plaintiff and Class Members.

25.    Defendant made promises and representations to its customers, including Plaintiff and Class Members, that their Private Information would be kept safe and confidential, that the privacy of that information would be maintained, and that Defendant would delete any sensitive information after it was no longer required to maintain it.

26.    Plaintiff's and Class Members' Private Information was provided to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

27.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information. Plaintiff and Class Members value the confidentiality of their Private Information and demand security to safeguard their Private Information.

28.    Defendant had a duty to adopt reasonable measures to protect the Private Information of Plaintiff and Class Members from involuntary disclosure to third parties. Defendant has a legal duty to keep consumers' Private Information safe and confidential.

29.    Defendant had obligations created by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTCA"), the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), contract, industry standards, and representations made to Plaintiff and Class Members, to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

30.    Defendant derived a substantial economic benefit from collecting Plaintiff's and Class Members' Private Information. Without the required submission of Private Information, Defendant could not perform the services it provides.

31.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known it was responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

**B. The Data Breach.**

32.    From October 2024 to January 2025, threat actors gained access to Plaintiff's Private Information when breaching Defendant's vendor, with whom Defendant shared Plaintiff's Private Information.[3]

33.    Despite learning of the Data Breach in early 2025, Defendant has not notified victims directly, did not file the required notice with the Montana Attorney General, and did not notify the Montana Auditor until October 2025.

34.    Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information it was maintaining for Plaintiff and Class Members, causing the exposure of Private Information, such as encrypting the information or deleting it when it is no longer needed.

35.    As demonstrated above, cybercriminals accessed and acquired files containing unencrypted Private Information of Plaintiff and Class Members. Plaintiff's and Class Members' Private Information was accessed and stolen in the Data Breach.

//

//

//

---

[3] https://www.crn.com/news/security/2025/conduent-discloses-theft-of-client-data-in-hack-significant-number-of-individuals-impacted.

**C. Defendant Acquires, Collects, and Stores the Private Information of Plaintiff and Class Members.**

36.    Defendant derives a substantial economic benefit from providing insurance services to its patients, and as a part of providing those services, Defendant retains and stores Plaintiff's and Class Members' Private Information.

37.    By obtaining, collecting, and storing the Private Information of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known it was responsible for protecting the Private Information from disclosure.

38.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

39.    Defendant's insureds, including Plaintiff and Class Members, relied on Defendant to keep their Private Information confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

40.    Upon information and belief, Defendant made promises to Plaintiff and Class Members to maintain and protect Plaintiff's and Class Members' Private Information, demonstrating an understanding of the importance of securing Private Information.

41.     Defendant's negligence in safeguarding the Private Information of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

### D. Defendant Knew or Should Have Known of the Risk Because Institutions in Possession of Private Information are Particularly Susceptible to Cyber Attacks.

42.     Defendant's data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches targeting institutions that collect and store Private Information, like Defendant, preceding the date of the Data Breach.

43.     The health insurance industry is a prime target for ransomware attacks—such as this—because these organizations store vast amounts of sensitive data, including medical records, financial information, and personal identification details.[4] This data is incredibly valuable on the black market, where it can be sold for purposes such as identity theft and insurance fraud.[5] The high demand for this data makes healthcare a lucrative target for cybercriminals.[6]

---

[4] https://www.raventek.com/safeguarding-patient-data-why-healthcare-is-a-prime-target-for-cybercrime/#:~:text=help%20mitigate%20risks.-
,High%20Value%20of%20Patient%20Data,identity%20theft%20and%20insurance%20fraud.
[5] *Id.*
[6] *Id.*

44.    Defendant knew and understood that unprotected Private Information is valuable and highly sought after by criminal parties who seek to illegally monetize that Private Information through unauthorized access.

45.    In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[7]

46.    In light of recent high profile data breaches at other industry leading companies, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that the Private Information it collected and maintained would be targeted by cybercriminals.

47.    As a custodian of Private Information, Defendant knew, or should have known, the importance of safeguarding the Private Information entrusted to it by Plaintiff and Class Members, and of the foreseeable consequences if its data security systems were breached, including the significant costs imposed on Plaintiff and Class Members as a result of a breach.

---

[7] *See* 2021 Data Breach Annual Report (ITRC, Jan. 2022) (http://notified.idtheftcenter.org/s/), at 6.

48.     Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being compromised.

49.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's server(s), amounting to potentially thousands of individuals' detailed Private Information, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

50.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

51.     The ramifications of Defendant's failure to keep secure the Private Information of Plaintiff and Class Members are long lasting and severe. Once Private Information is stolen—particularly PHI—fraudulent use of that information and damage to victims may continue for years.

**E. The Value of Personally Identifiable Information is Substantial.**

52.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[8]  The FTC describes "identifying information" as "any name or

---

[8] 17 C.F.R. § 248.201 (2013).

number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[9]

53.    The Private Information of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials.[10]

54.    For example, Private Information can be sold at a price ranging from $40 to $200.[11] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[12]

55.    Theft of PHI is also gravely serious: "[a] thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get other care. If the thief's health information is mixed

---

[9] *Id.*

[10] *Your personal data is for sale on the dark web. Here's how much it costs,* DIGITAL TRENDS, Oct. 16, 2019, http://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.

[11] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, EXPERIAN, Dec. 6, 2017, http://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.

[12] *In the Dark*, VPN OVERVIEW, 2019, http://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/.

with yours, your treatment, insurance and payment records, and credit report may be affected."[13]

56.    "Medical records are a gold mine for criminals—they can access a patient's name, DOB, Social Security and insurance numbers, and even financial information all in one place."[14] A complete identity theft kit that includes health insurance credentials may be worth up to $1,000 on the black market.[15]

57.    The greater efficiency of electronic health records brings the risk of privacy breaches. These electronic health records contain a lot of sensitive information (e.g., patient data, patient diagnosis, lab results, medications, prescriptions, treatment plans, etc.) that is valuable to cybercriminals. One patient's complete record can be sold for hundreds of dollars on the dark web. As such, Private Information is a valuable commodity for which a "cyber black market" exists where criminals openly post stolen payment card numbers, Social Security numbers, and other personal information on several underground internet websites. Unsurprisingly, the health care industry is at high risk and is acutely affected by cyberattacks, like the Data Breach here.

---

[13] *Medical I.D. Theft*, EFraudPrevention http://efraudprevention.net/home/education/?a= 187#:~:text=A%20thief%20may%20use%20your,credit%20report%20may%20be%20affected.

[14] *You Got It, They Want It: Criminals Targeting Your Private Healthcare Data, New Ponemon Study Shows*, IDX (May 14, 2015) https://www.idx.us/knowledge-center/you-got-it-they-want-it-criminals-are-targeting-your-private-healthcare-dat..

[15] *Managing cyber risks in an interconnected world: Key findings from The Global State of Information Security Survey 2015*, PRICEWATERHOUSECOOPERS (Sept. 30, 2014), https://www.pwc.com/gx/en/consulting-services/information-security-survey/assets/the-global-state-of-information-security-survey-2015.pdf.

58.    Between 2005 and 2019, at least 249 million people were affected by health care data breaches.[16] Indeed, during 2019 alone, over 41 million health care records were exposed, stolen, or unlawfully disclosed in 505 data breaches.[17] In short, these sorts of data breaches are increasingly common, especially among health care systems, which account for 30.03 percent of overall health data breaches, according to cybersecurity firm Tenable.[18]

59.    According to account monitoring company LogDog, medical data sells for $50 and up on the dark web.[19]

60.    "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[20]

61.    A study by Experian found that the average cost of medical identity theft is "about $20,000" per incident and that most victims of medical identity theft

---

[16] http://www.ncbi.nlm.nih.gov/pmc/articles/PMC7349636/#B5-healthcare-08-00133/.

[17] http://www.hipaajournal.com/december-2019-healthcare-data-breach-report/.

[18] http://www.tenable.com/blog/healthcare-security-ransomware-plays-a-prominent-role-incovid-19-era-breaches/.

[19] Lisa Vaas, *Ransomware Attacks Paralyze, and Sometimes Crush, Hospitals*, Naked Security (Oct. 3, 2019), http://nakedsecurity.sophos.com/2019/10/03/ransomware-attacks-paralyze-and-sometimes-crush-hospitals/#content.

[20] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, http://khn.org/news/rise-of-indentity-theft/.

were forced to pay out-of-pocket costs for health care they did not receive to restore coverage.[21] Almost half of medical identity theft victims lose their health care coverage as a result of the incident, while nearly one-third of medical identity theft victims saw their insurance premiums rise, and 40 percent were never able to resolve their identity theft at all.[22]

62.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach—PHI and names—is impossible to "close" and difficult, if not impossible, to change.

63.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information . . . [is] worth more than 10x on the black market."[23]

---

[21] *See* Elinor Mills, "Study: Medical Identity Theft is Costly for Victims," CNET (Mar, 3, 2010), http://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/.

[22] *Id.; see also Healthcare Data Breach: What to Know About them and What to Do After One,* EXPERIAN, http://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-toknow-about-them-and-what-to-do-after-one/ (last visited May 22, 2025).

[23] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT WORLD (Feb. 6, 2015), http://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

64.    Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

65.    For example, with the Private Information compromised in the Data Breach, identity thieves can fraudulently obtain medical services, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.[24]

66.    The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[25]

---

[24] *See, e.g.*, Nikkita Walker, *What Can You Do With Your Social Security Number*, CREDIT.COM (Oct. 19, 2023), https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

[25] *Report to Congressional Requesters*, GAO, at 29 (June 2007), http://www.gao.gov/assets/gao-07-737.pdf.

**F. Defendant Failed to Comply with FTC Guidelines.**

67.     The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the FTCA, 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

68.     In October 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal consumer information they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

69.     The FTC further recommends that companies not maintain Private

Information longer than is needed for authorization of a transaction, limit access to

sensitive data, require complex passwords to be used on networks, use industry-

tested methods for security, monitor the network for suspicious activity, and verify

that third-party service providers have implemented reasonable security measures.

70.     The FTC has brought enforcement actions against businesses for

failing to adequately and reasonably protect consumer data by treating the failure

to employ reasonable and appropriate measures to protect against unauthorized

access to confidential consumer data as an unfair act or practice prohibited by the

FTCA. Orders resulting from these actions further clarify the measures businesses

must take to meet their data security obligations.

71.     As evidenced by the Data Breach, Defendant failed to properly

implement basic data security practices and failed to audit, monitor, or ensure the

integrity of its data security practices. Defendant's failure to employ reasonable

and appropriate measures to protect against unauthorized access to Plaintiff's and

Class Members' Private Information constitutes an unfair act or practice prohibited

by Section 5 of the FTCA.

72.     Defendant was at all times fully aware of its obligation to protect the

Private Information of consumers under the FTCA yet failed to comply with such

obligations. Defendant was also aware of the significant repercussions that would

result from its failure to do so. Accordingly, Defendant's conduct was particularly

unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

**G. Defendant Failed to Comply with HIPAA Guidelines.**

73.    Defendant is a covered entity under HIPAA (45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

74.    Defendant is subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act ("HITECH"). *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

75.    HIPAA's Privacy Rule or Standards for Privacy of Individually Identifiable Health Information establishes national standards for the protection of health information.

76.    HIPAA's Privacy Rule or Security Standards for the Protection of Electronic Protected Health Information establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

77.    HIPAA requires "comply[iance] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

78.    "Electronic protected health information" is "individually identifiable health information … that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

79.    HIPAA's Security Rule requires defendants to do the following:

a.    Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b.    Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c.    Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d.    Ensure compliance by its workforce.

80.    HIPAA also requires Defendant to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e). Additionally, Defendant is required under HIPAA to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or

software programs that have been granted access rights." 45 C.F.R. §

164.312(a)(1).

81.    HIPAA and HITECH also obligated Defendant to implement policies

and procedures to prevent, detect, contain, and correct security violations, and to

protect against uses or disclosures of electronic protected health information that

are reasonably anticipated but not permitted by the privacy rules. *See* 45 C.F.R. §

164.306(a)(1) and § 164.306(a)(3); see also 42 U.S.C. § 17902.

82.    The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, also

requires Defendant to provide notice of the Data Breach to each affected individual

"without unreasonable delay and in no case later than 60 days following discovery

of the breach."

83.    Here, Defendant did not comply with the HIPAA Breach Notification

Rule because it discovered the Breach in early 2025 but has not yet notified

victims.

84.    HIPAA requires a covered entity to have and apply appropriate

sanctions against members of its workforce who fail to comply with the privacy

policies and procedures of the covered entity or the requirements of 45 C.F.R. Part

164, Subparts D or E. See 45 C.F.R. § 164.530(e).

85.    HIPAA requires a covered entity to mitigate, to the extent practicable,

any harmful effect that is known to the covered entity of a use or disclosure of

protected health information in violation of its policies and procedures or the

requirements of 45 C.F.R. Part 164, Subpart E by the covered entity or its business associate. See 45 C.F.R. § 164.530(f).

86.    HIPAA also requires the Office of Civil Rights ("OCR"), within the Department of Health and Human Services ("HHS"), to issue annual guidance documents on the provisions in the HIPAA Security Rule. *See* 45 C.F.R. §§ 164.302-164.318. For example, "HHS has developed guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost effective and appropriate administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements of the Security Rule." U.S. Department of Health & Human Services, Security Rule Guidance Material. The list of resources includes a link to guidelines set by the National Institute of Standards and Technology (NIST), which OCR says, "represent the industry standard for good business practices with respect to standards for securing e-PHI." US Department of Health & Human Services, Guidance on Risk Analysis.

87.    Defendant was at all times fully aware of its HIPAA obligations to protect the Private Information of consumers yet failed to comply with such obligations. Defendant was also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and

stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

**H. Defendant Failed to Comply with Industry Standards.**

88.    Experts studying cybersecurity routinely identify health care institutions like Defendant as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

89.    Some industry best practices that should be implemented by institutions dealing with sensitive Private Information, like Defendant, include, but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendant failed to follow some or all of these industry best practices.

90.    Other best cybersecurity practices that are standard at large institutions that store Private Information include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendant failed to follow these cybersecurity best practices.

91.    Defendant failed to meet the minimum standards of any of the

following frameworks: the NIST Cybersecurity Framework Version 1.1 (including

without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7,

PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7,

DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security

Controls (CIS CSC), which are all established standards in reasonable

cybersecurity readiness.

92.    Defendant failed to comply with these accepted standards, thereby

permitting the Data Breach to occur.

**I.  Defendant Breached Its Duty to Safeguard Plaintiff's and Class Members' Private Information.**

93.    In addition to its obligations under federal laws, Defendant owed

duties to Plaintiff and Class Members to exercise reasonable care in obtaining,

retaining, securing, safeguarding, deleting, and protecting the Private Information

in its possession from being compromised, lost, stolen, accessed, and misused by

unauthorized persons. Defendant owed a duty to Plaintiff and Class Members to

provide reasonable security, including consistency with industry standards and

requirements, and to ensure that its computer systems, networks, and protocols

adequately protected the Private Information of Class Members.

94.    Defendant breached its obligations to Plaintiff and Class Members

and/or was otherwise negligent and reckless because it failed to properly maintain

and safeguard its computer systems and data and failed to audit, monitor, or ensure the integrity of its data security practices. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

      a.    Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

      b.    Failing to adequately protect consumers' Private Information;

      c.    Failing to properly monitor its own data security systems for existing intrusions;

      d.    Failing to adhere to industry standards for cybersecurity as discussed above; and

      e.    Otherwise breaching its duties and obligations to protect Plaintiff's and Class Members' Private Information.

95.    Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access its computer network and systems, which contained unsecured and unencrypted Private Information.

96.    Had Defendant remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiff's and Class Members' confidential Private Information.

**J.  Common Injuries & Damages.**

97.     As a result of Defendant's ineffective and inadequate data security

practices, the Data Breach, and the foreseeable consequences of Private

Information ending up in the possession of criminals, the risk of identity theft to

the Plaintiff and Class Members has materialized and is imminent, and Plaintiff

and Class Members have all sustained actual injuries and damages, including: (a)

invasion of privacy; (b) loss of time and loss of productivity incurred mitigating

the materialized risk and imminent threat of identity theft; (c) the loss of benefit of

the bargain (price premium damages); (d) diminution of value of their Private

Information; and (e) the continued risk to their Private Information, which remains

in the possession of Defendant, and which is subject to further breaches, so long as

Defendant fails to undertake appropriate and adequate measures to protect

Plaintiff's and Class Members' Private Information.

**K. The Data Breach Increases Victims' Risk of Identity Theft.**

98.     Plaintiff and Class Members are at a heightened risk of identity theft

for years to come.

99.     As demonstrated above, the unencrypted Private Information of Class

Members has already been listed for sale on the dark web because that is the *modus*

*operandi* of hackers. In addition, unencrypted Private Information may fall into the

hands of companies that will use the detailed Private Information for targeted

marketing without the approval of Plaintiff and Class Members. Unauthorized

individuals can easily access the Private Information of Plaintiff and Class Members.

100.   The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal Private Information to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

101.   Because a person's identity is akin to a puzzle with multiple data points, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity—or track the victim to attempt other hacking crimes against the individual to obtain more data to perfect a crime.

102.   For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate and trick individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails. Data breaches can be the starting point for these additional targeted attacks on the victim.

103.   One such example of criminals piecing together bits and pieces of compromised Private Information for profit is the development of "Fullz" packages.[26]

104.   With "Fullz" packages, cybercriminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals.

105.   The development of "Fullz" packages means here that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff's and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information that was exfiltrated in the Data Breach, criminals may still

---

[26] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See*, *e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen from Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), http://krebsonsecuritv.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm.

easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

**L. Loss of Time to Mitigate Risk of Identity Theft and Fraud.**

106.   As a result of the recognized risk of identity theft, when a data breach occurs, and an individual is notified by a company that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft or fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm—yet the resource and asset of time has been lost.

107.   Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions to remedy the harms they have or may experience as a result of the Data Breach, such as contacting credit bureaus to place freezes on their accounts; changing passwords and re-securing their own computer networks; and checking their financial accounts and health insurance statements for any indication of fraudulent activity, which may take years to detect.

108.   These efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in

which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[27]

109.    These efforts are also consistent with the steps that FTC recommends that data breach victims take to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (and considering an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[28]

110.    A study by Identity Theft Resource Center shows the multitude of harms caused by fraudulent use of personal and financial information:[29]

---

[27] *See* United States Government Accountability Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (June 2007), http://www.gao.gov/new.items/d07737.pdf.

[28] *See* Federal Trade Commission, *Identity Theft.gov*, http://www.identitytheft.gov/Steps.

[29] Jason Steele, "Credit Card and ID Theft Statistics," Oct. 24, 2017, http://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276.php.

Americans' expenses/disruptions as a result of criminal activity in their name (2016)

| | |
|---|---|
| I had to request government assistance | 29.5% |
| I had to borrow money | 60.7% |
| Had to use my savings to pay for expenses | 32.8% |
| Couldn't qualify for a home loan | 32.8% |
| I lost my home/place of residence | 31.1% |
| I couldn't care for my family | 34.4% |
| Had to rely on family/friends for assistance | 49.2% |
| Lost out on an employment opportunity | 44.3% |
| Lost time away from school | 19.7% |
| Missed time away from work | 55.7% |
| Was generally inconvenienced | 73.8% |
| Other | 23% |
| None of these | 3.3% |

Source: Identity Theft Resource Center    creditcards·com

## M. Diminution of Value of Private Information.

111.   PII and PHI are valuable property rights.[30] Their value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk-to-reward analysis illustrates beyond a doubt that Private Information has considerable market value.

112.   An active and robust legitimate marketplace for Private Information exists. In 2019, the data brokering industry was worth roughly $200 billion.[31]

---

[30] *See, e.g.*, Randall T. Soma, et al., Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

[31] http://www.latimes.com/business/story/2019-11-05/column-data-brokers.

113.    In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[32,33]

114.    Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50.00 a year.[34]

115.    Theft of PHI is also gravely serious: "[a] thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get other care. If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report may be affected."[35]

116.    As a result of the Data Breach, Plaintiff's and Class Members' Private Information, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss.

---

[32] http://datacoup.com/.

[33] http://digi.me/what-is-digime/.

[34] Nielsen Computer & Mobile Panel, *Frequently Asked Questions*, http://computermobilepanel. nielsen.com/ui/US/en/faqen.html.

[35] *What to Know About Medical Identity Theft*, FTC (Sept. 2024), https://consumer.ftc.gov/articles/what-know-about-medical-identity-theft

Moreover, the Private Information is now readily available, and the rarity of the Data has been lost, thereby causing additional loss of value.

117.   At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiff and Class Members, and of the foreseeable consequences that would occur if their data security systems were breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

118.   Defendant was, or should have been, fully aware of the unique type and the significant volume of data on its network, amounting to potentially thousands of individuals' detailed, Personal Information, and thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

119.   The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

### N. The Future Cost of Credit and Identity Theft Monitoring is Reasonable and Necessary.

120.   Given the type of targeted attack in this case and sophisticated criminal activity, the type of Private Information involved, and the volume of data obtained in the Data Breach, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark

web for sale and purchase by criminals intending to utilize the Private Information for identity theft crimes.

121.   Such fraud may go undetected for years; consequently, Plaintiff and Class Members are at a present and continuous risk of fraud and identity theft for many years into the future.

122.   The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class Member. This is a reasonable and necessary cost to monitor to protect Class Members from the risk of identity theft that arose from the Data Breach. This is a future cost for a minimum of five years that Plaintiff and Class Members would not need to bear but for Defendant's failure to safeguard their Private Information.

**O. Plaintiff's Experience.**

123.   Plaintiff is the current insured of Defendant and provided Private Information to Defendant in exchange for services.

124.   At the time of the Data Breach, Defendant retained Plaintiff's Private Information in its system.

125.   Plaintiff reasonably believed her Private Information was compromised in the Data Breach and stolen by cybercriminals who illegally accessed Defendant's network for the specific purpose of targeting the Private Information.

126.    Plaintiff takes reasonable measures to protect her Private Information. She has never knowingly transmitted unencrypted Private Information over the internet or other unsecured source.

127.    Plaintiff stores any documents containing her Private Information in a safe and secure location and diligently chooses unique usernames and passwords for online accounts.

128.    As a result of the Data Breach, Plaintiff has experienced a significant increase in anxiety, depression, and fear.

129.    As a result of the Data Breach, Plaintiff has suffered a loss of time and has spent and continues to spend time monitoring her account and credit score and has sustained emotional distress. This is time that was lost and unproductive and took away from other activities and work duties.

130.    Plaintiff also suffered actual injury in the form of damages to and diminution in the value of her Private Information—a form of intangible property that she entrusted to Defendant for the purpose of obtaining services from Defendant, which was compromised in and as a result of the Data Breach.

131.    Plaintiff suffered lost time, interference, and inconvenience as a result of the Data Breach.

132.    Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her

Private Information, especially her name, Social Security number, and PHI, being placed in the hands of criminals.

133.   Defendant obtained and continues to maintain Plaintiff's Private Information and has a continuing legal duty and obligation to protect that Private Information from unauthorized access and disclosure. Plaintiff reasonably believes her Private Information was compromised and disclosed as a result of the Data Breach.

134.   As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. As a result of the Data Breach, Plaintiff is at present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## CLASS ALLEGATIONS

135.   Pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, Plaintiff and Class Members bring this class action as a class action on behalf of themselves and the following class:

> **<u>Statewide Class</u>**
>
> All individuals residing in the State of Montana whose Private Information was compromised in the Data Breach ("Class").

136.   Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors,

and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

137. Plaintiff reserves the right to amend the definition of the proposed Class or to add a subclass before the Court determines whether certification is appropriate.

138. <u>Numerosity</u>: On information and belief, the putative Class is comprised of approximately **462,000 individuals** making joinder impracticable.[36] Disposition of this matter as a class action will provide substantial benefits and efficiencies to the Parties and the Court.

139. <u>Commonality and Predominance</u>: The rights of the Plaintiff and each of the Class Members were violated in a virtually identical manner as a direct and/or proximate result of Defendant's willful, reckless and/or negligent actions and/or inaction and the resulting Breach. Questions of law and fact common to all Class Members exist and predominate over any questions affecting only individual Class Members including, inter alia:

a.    Whether Defendant willfully, recklessly and/or negligently failed to maintain and/or execute reasonable procedures designed to prevent

---

[36] https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf (reporting 21,243 individuals impacted).

unauthorized access to Plaintiff's and the other Class Members' PHI and/or PII;

      b.     Whether Defendant was negligent in failing to properly safeguard and protect Plaintiff's and the other Class Members' PHI and/or PII;

      c.     Whether Defendant owed a duty to Plaintiff and the other Class Members to exercise reasonable care in safeguarding and protecting their PHI and/or PII;

      d.     Whether Defendant breached the duty to exercise reasonable care in failing to safeguard and protect Plaintiff's and the other Class Members' PHI and/or PII;

      e.     Whether, by publicly disclosing Plaintiff's and the other Class Members' PHI and/or PII without authorization, Defendant invaded their privacy; and

      f.     Whether Plaintiff and the other Class Members sustained damages as a result of Defendant's failure to safeguard and protect their PHI and/or PII.

140.    <u>Adequacy</u>: Plaintiff and her counsel will fairly and adequately represent the interests of the other Class Members. Plaintiff has no interests antagonistic to, or in conflict with, the other Class Members' interests. Plaintiff's

lawyers are highly experienced in the prosecution of consumer class action and data breach cases.

141.  <u>Typicality</u>: Plaintiff's claims are typical of the other Class Members' claims in that Plaintiff's claims and the other Class Members' claims all arise from Defendant's failure to properly safeguard and protect their PHI and PII.

142.  <u>Superiority and Manageability</u>: A class action is superior to all other available methods for fairly and efficiently adjudicating Plaintiff's and the other Class Members' claims.  Plaintiff and the other Class Members have been harmed as a result of Defendant's wrongful actions and/or inaction and the resulting Breach. Litigating this case as a class action will reduce the possibility of repetitious litigation relating to Defendant's conduct.

143.  Class certification, therefore, is appropriate pursuant to Federal rules because the above common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

144.  The expense and burden of litigation would substantially impair the ability of Class Members to pursue individual lawsuits in order to vindicate their rights. Absent a class action, Defendant will retain the benefits of its wrongdoing despite their serious violations of the law.

145.  The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the

ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

146.   Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

147.   Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the Private Information of Class Members, may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and may continue to act unlawfully as set forth in this Complaint.

## CLAIMS FOR RELIEF

### COUNT ONE
### NEGLIGENCE
### (On Behalf of Plaintiff and the Class)

148.   Plaintiff re-alleges and incorporates by reference all preceding factual paragraphs as though fully set forth herein.

149.   Defendant solicited, collected, stored, and maintained the Private Information of Plaintiff and Class Members inadequately when sharing this information with its vendors.

150.   Upon accepting and storing Plaintiff's and Class Members' Private Information on its computer systems and networks, Defendant undertook and owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their Private Information from unauthorized access and disclosure.

151.   Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its computer systems and networks, and the personnel responsible for them, adequately protected the Private Information, including its vendors.

152.   Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

153.   Defendant had full knowledge of the sensitivity of the Private Information in its possession and the types of harm that Plaintiff and Class Members could and would suffer if the Private Information was wrongfully accessed or disclosed. Plaintiff and Class Members were therefore the foreseeable victims of any inadequate data security practices.

154.   Defendant's duty to implement and maintain reasonable data security practices arose as a result of the special relationship that exists between Defendant and consumers, which is recognized by laws and regulations, including, but not limited to, HIPAA, the FTC Act, and common law.

155.   Defendant was in a superior position to ensure its data security practices were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class Members from a data breach.

156.   Defendant knew Plaintiff and Class Members relied on it to protect their Private Information. Plaintiff and Class Members were not in a position to assess the data security practices used by Defendant. Because they had no means to identify Defendant's security deficiencies, Plaintiff and Class Members had no opportunity to safeguard their Private Information from cybercriminals. Defendant exercised control over the Private Information stored on its systems and networks; accordingly, Defendant was best positioned and most capable of preventing the harms caused by the Data Breach.

157.   Defendant was aware, or should have been aware, of the fact that cybercriminals routinely target entities in the healthcare industry through cyberattacks in an attempt to steal valuable Private Information. In other words, Defendant knew of a foreseeable risk to its data security systems but failed to implement reasonable security measures.

158.   Defendant owed Plaintiff and Class Members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing their Private Information, including taking action to reasonably safeguard or delete such data and providing notification to Plaintiff and Class Members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

159.   Defendant's duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized

in situations where the actor's own conduct or misconduct exposes another to such risk, or defeats protections put in place to guard against that risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B.

160.    Defendant had a duty to protect and safeguard the Private Information of Plaintiff and the Class from unauthorized access and disclosure. Additionally, Defendant owed Plaintiff and the Class a duty:

a.      to exercise reasonable care in designing, implementing, maintaining, monitoring, and testing its networks, systems, protocols, policies, procedures and practices to ensure that Plaintiff's and Class Members' Private Information was adequately secured from impermissible release, disclosure, and publication;

b.      to protect Plaintiff's and Class Members' Private Information by using reasonable and adequate data security practices and procedures;

c.      to implement processes to quickly detect a data breach, security incident, or intrusion involving its networks and servers; and

d.      to promptly notify Plaintiff and Class Members of any data breach, security incident, or intrusion that affected or may have affected their Private Information.

161.    Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information.

162.    The specific negligent acts and omissions committed by Defendant include, but are not limited to:

a.    Failing to adopt, implement, and maintain adequate data security measures to safeguard Plaintiff's and Class Members' Private Information;

b.    Failing to adequately monitor the security of its networks and systems;

c.    Failing to ensure its email systems had plans in place to maintain reasonable data security safeguards;

d.    Failing to implement and maintain adequate mitigation policies and procedures;

e.    Allowing unauthorized access to Plaintiff's and Class Members' Private Information;

f.    Failing to detect in a timely manner that Plaintiff's and Class Members' Private Information had been compromised; and

g.    Failing to timely notify Plaintiff and Class Members about the Data Breach so they could take appropriate steps to mitigate the potential for identity theft and other damages.

163.    Defendant's willful failure to abide by its duties to Plaintiff and Class Members was wrongful, reckless, and grossly negligent considering the foreseeable risks and known threats.

164.    It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff's and Class Members' Private Information would result in injury to Plaintiff and Class Members.

165.    Furthermore, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the healthcare industry.

166.    As a direct and proximate result of Defendant's negligent conduct, including, but not limited to, its failure to implement and maintain reasonable data security practices and procedures as described above, Plaintiff and the Class have suffered damages and are at imminent risk of additional harms and damages.

167.    Through Defendant's acts and omissions described herein, including but not limited to Defendant's failure to protect the Private Information of Plaintiff and Class Members from being stolen and misused, Defendant unlawfully breached its duty to use reasonable care to adequately protect and secure the Private Information of Plaintiff and Class Members while it was within Defendant's possession and control.

168.    Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiff and Class Members, Defendant prevented Plaintiff and Class Members from taking meaningful, proactive steps to secure their Private Information and mitigate the impact of the Data Breach.

169.   Plaintiff and Class Members could have taken actions earlier had they been timely notified of the Data Breach.

170.   Plaintiff and Class Members could have enrolled in credit monitoring, instituted credit freezes, and changed their passwords, among other things, had they been alerted to the Data Breach more quickly.

171.   Plaintiff and Class Members suffered harm from Defendant's delay in notifying them of the Data Breach.

172.   As a direct and proximate result of Defendant's conduct, including, but not limited to, Defendant's failure to implement and maintain reasonable data security practices and procedures, Plaintiff and Class Members have suffered or will suffer injury and damages, including, but not limited to: (i) the loss of the opportunity to determine for themselves how their Private Information is used; (ii) the publication and theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, fraud, and/or unauthorized use of their Private Information, including the need for substantial credit monitoring and identity protection services for an extended period of time; (iv) lost time and opportunity costs associated with efforts expended to address and mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest and recover from fraud and identity theft; (v) costs associated with placing freezes on credit reports and password protections; (vi) anxiety, emotional

distress, loss of privacy, and other economic and non-economic losses; (vii) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised Private Information for the rest of their lives. Thus, Plaintiff and the Class are entitled to damages in an amount to be proven at trial.

173.   The damages Plaintiff and the Class have suffered and will suffer (as alleged above) were and are the direct and proximate result of Defendant's negligent conduct.

174.   Plaintiff and the Class have suffered cognizable injuries and are entitled to actual and punitive damages in an amount to be proven at trial.

**COUNT TWO**
**NEGLIGENCE *PER SE***
**(On Behalf of Plaintiff and the Class)**

175.   Plaintiff re-alleges and incorporates all preceding factual paragraphs as though fully set forth herein.

176.   Defendant had a duty to implement and maintain reasonable data security practices pursuant to Section 5 of the FTC Act, 15 U.S.C. § 45(a), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted

and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect sensitive and confidential data.

177.   The FTC Act prohibits "unfair practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII/PHI. The FTC publications and orders described above also formed part of the basis of Defendant's duty in this regard.

178.   Defendant solicited, collected, stored, and maintained Plaintiff's and Class Members' Private Information as part of its regular business, which affects commerce.

179.   Defendant violated the FTC Act by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information and by failing to comply with applicable industry standards, as described herein.

180.   Defendant breached its duties to Plaintiff and the Class under the FTC Act by failing to implement and maintain fair, reasonable, and adequate data security practices to safeguard Plaintiff's and Class Members' Private Information, and by failing to provide prompt notice of the Data Breach without unreasonable delay.

181.   Defendant's multiple failures to comply with applicable laws and regulations constitutes negligence *per se*.

182.    Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

183.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, like Defendant, that fail to employ reasonable data security measures and avoid unfair and deceptive practices, causing the same harm as that suffered by Plaintiff and the Class.

184.    Defendant breached its duties to Plaintiff and the Class by unreasonably delaying and failing to provide notice of the Data Breach expeditiously and/or as soon as practicable to Plaintiff and the Class.

185.    Defendant's violations of the FTC Act constitute negligence *per se*.

186.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered, and continue to suffer, damages arising from the Data Breach, as alleged above.

187.    The injury and harm that Plaintiff and Class members suffered (as alleged above) was the direct and proximate result of Defendant's negligence *per se*.

188.    Defendant also had a duty to use reasonable security measures under HIPAA, which requires covered entities and business associates, like Defendant, to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and

physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1). Some or all of the medical information at issue in this action constitutes "protected health information" within the meaning of HIPAA.

189.    Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. § 1301, *et seq*. These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling Private Information. HHS subsequently promulgated multiple regulations under the authority of the Administrative Simplification provisions of HIPAA. These rules include 45 C.F.R. § 164.304, 45 C.F.R. § 164.306(a)(1-4), 45 C.F.R. § 164.312(a)(1), 45 C.F.R. § 164.308(a)(1)(i), 45 C.F.R. § 164.308(a)(1)(ii)(D), and 45 C.F.R. § 164.530(b).

190.    Defendant's violations of HIPAA constitute negligence *per se*.

191.    Plaintiff and the Class are within the class of persons HIPAA was intended to protect.

192.    The harm that occurred as a result of the Data Breach is the type of harm HIPAA was intended to guard against.

193.    Defendant's duty to use reasonable care in protecting Plaintiff's and Class Members' Private Information arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect and secure Private Information in its possession and control.

194.    As a direct and proximate result of Defendant's negligence *per se*,

Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual instances of identity theft or fraud; (ii) the compromise, publication, and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, fraud, and/or unauthorized use of their Private Information; (iv) lost time and opportunity costs associated with efforts to mitigate the actual and future consequences of the Data Breach, including, but not limited to, time and resources spent researching how to prevent, detect, contest, and recover from fraud and identity theft; (v) costs associated with placing or removing freezes on credit reports; (vi) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the ongoing impact of the Data Breach for the remainder of the lives of Plaintiff and the Class.

195.   Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class have suffered and will suffer imminent and impending injuries arising from the increased risk of future fraud and identity theft.

196.   As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and the Class are entitled to recover actual, consequential, and nominal

damages.

197.    Plaintiff and the Class have suffered injury and are entitled to damages in amounts to be proven at trial.

## COUNT THREE
## BREACH OF IMPLIED CONTRACT
## <u>(On Behalf of Plaintiff and the Class)</u>

198.    Plaintiff re-alleges and incorporates all preceding factual paragraphs as though fully set forth herein.

199.    Plaintiff and Class Members were required to deliver their Private Information to Defendant as part of the process of obtaining health insurance services provided by Defendant. Plaintiff and Class Members paid money, or money was paid on their behalf, to Defendant in exchange for insurance services.

200.    Defendant solicited, offered, and invited Class Members to provide their Private Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

201.    Defendant accepted possession of Plaintiff's and Class Members' Private Information for the purpose of providing services to Plaintiff and Class Members.

202.    Plaintiff and Class Members entrusted their Private Information to Defendant. In so doing, Plaintiff and Class Members entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such

information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

203.   In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendant's data security practices complied with relevant laws and regulations and were consistent with industry standards.

204.   Implicit in the agreement between Plaintiff and Class Members and Defendant to provide Private Information, was the latter's obligation to: (a) use such Private Information for business purposes only, (b) take reasonable steps to safeguard that Private Information, (c) prevent unauthorized disclosures of the Private Information, (d) provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information, (e) reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses, and (f) retain the Private Information only under conditions that kept such information secure and confidential.

205.   The mutual understanding and intent of Plaintiff and Class Members on the one hand, and Defendant, on the other, is demonstrated by their conduct and course of dealing.

206.    On information and belief, at all relevant times, Defendant promulgated, adopted, and implemented written privacy policies whereby it expressly promised Plaintiff and Class Members that it would only disclose Private Information under certain circumstances, none of which relate to the Data Breach.

207.    On information and belief, Defendant further promised to comply with industry standards and to make sure that Plaintiff's and Class Members' Private Information would remain protected.

208.    Plaintiff and Class Members paid money to Defendant with the reasonable belief and expectation that Defendant would use part of its earnings to obtain adequate data security. Defendant failed to do so.

209.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of the implied contract between them and Defendant to keep their information reasonably secure.

210.    Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of their implied promise to monitor their computer systems and networks to ensure that it adopted reasonable data security measures.

211.    Plaintiff and Class Members fully and adequately performed their obligations under the implied contracts with Defendant.

212.    Defendant breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their Private Information, by failing to

delete the information of Plaintiff and the Class once the relationship ended, and by failing to provide accurate notice to them that Private Information was compromised as a result of the Data Breach.

213.   Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard Private Information, failing to timely and accurately disclose the Data Breach to Plaintiff and Class Members and continued acceptance of Private Information and storage of other personal information after Defendant knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

214.   As a direct and proximate result of Defendant's breach of the implied contracts, Plaintiff and Class Members sustained damages, including, but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) actual misuse of the compromised data consisting of an increase in spam calls, texts, and/or emails; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long

as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

215.   Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

216.   Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

**COUNT FOUR**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

217.   Plaintiff re-alleges and incorporates all preceding factual paragraphs as though fully set forth herein.

218.   Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including from payments made by and/or on behalf of its patients, including Plaintiff and Class Members, in exchange for insurance services, for which Defendant collected and maintained Plaintiff's and Class Members' Private Information.

219.   As such, a portion of the value and monies derived from Plaintiff and Class Members is to be used to provide a reasonable level of data security, and the

amount of the portion of each payment made that is allocated to data security is known to Defendant.

220.   Plaintiff and Class Members conferred a monetary benefit on Defendant, in providing it with their valuable Private Information.

221.   Defendant knew that Plaintiff and Class Members conferred a benefit upon it and accepted and retained that benefit by accepting and retaining the Private Information entrusted to it. Defendant profited from Plaintiff's and Class Members' retained data and used Plaintiff's and Class Members' Private Information for business purposes.

222.   In particular, Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to increase its own profit at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profit over the requisite security.

223.   Under the principles of equity and good conscience, Defendant should not be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon it.

224.   Plaintiff and Class Members have no adequate remedy at law.

225.    As a direct and proximate result of Defendant's conduct, Plaintiff and

Class Members have suffered and will suffer injury, including but not limited to:

(i) invasion of privacy; (ii) lost or diminished value of Private Information; (iii)

lost time and opportunity costs associated with attempting to mitigate the actual

consequences of the Data Breach; (iv) loss of benefit of the bargain; (v) an increase

in spam calls, texts, and/or emails; and (vi) the continued and certainly increased

risk to their Private Information, which: (a) remains unencrypted and available for

unauthorized third parties to access and abuse; and (b) remains backed up in

Defendant's possession and is subject to further unauthorized disclosures so long

as Defendant fails to undertake appropriate and adequate measures to protect the

Private Information.

226.    Plaintiff and Class Members are entitled to full refunds, restitution,

and/or damages from Defendant and/or an order proportionally disgorging all

profits, benefits, and other compensation obtained by Defendant from its wrongful

conduct. This can be accomplished by establishing a constructive trust from which

Plaintiff and Class Members may seek restitution or compensation.

## COUNT FIVE
## VIOLATIONS OF THE MONTANA CONSUMER PROTECTION ACT
## (On Behalf of Plaintiff and the Class)

227.    Plaintiff re-alleges and incorporates all preceding factual paragraphs

as though fully set forth herein.

228.   Defendant is a person within the meaning of the Montana Consumer Protection Act and it conducts "trade" and "commerce" within the meaning of the Act.

229.   Plaintiff and the Class members are "persons" within the meaning of the Act.

230.   Defendant engaged in unfair or deceptive acts or practices in the conduct of its business by the conduct set forth above. These unfair or deceptive acts or practices include the following:

> a.    failing to adequately secure Plaintiff's and the Class members' sensitive personal information from disclosure to unauthorized third parties or for improper purposes;
>
> b.    enabling the disclosure of personal and sensitive facts about Plaintiff and the Class members in a manner highly offensive to a reasonable person;
>
> c.    enabling the disclosure of personal and sensitive facts about Plaintiff and the Class members without their informed, voluntary, affirmative, and clear consent;
>
> d.    omitting, suppressing, and concealing the material fact that Defendant did not reasonably or adequately secure Plaintiff's and the Class members' sensitive personal information; and

e.     Failing to disclose the Data Breach in a timely and accurate

manner.

231.   As a direct and proximate result of Defendant's unfair or deceptive

acts or practices, Plaintiff and the Class members have suffered injury in fact and

lost money.

232.   As a result of Defendant's conduct, Plaintiff and the Class members

have suffered actual damages, including damages from fraud and identity theft,

time and expenses related to monitoring their financial accounts for fraudulent

activity, an increased and imminent risk of fraud and identity theft, the lost value of

their personal information, and other economic and non-economic harm.

233.   Plaintiff and the Class members are therefore entitled to legal relief

against Defendant including recovery of actual damages, treble damages,

injunctive relief, attorneys' fees and costs, and such further relief as the Court may

deem proper.

## COUNT SIX
## BREACH OF FIDUCIARY DUTY
## <u>(On Behalf of Plaintiff and the Class)</u>

234.   Plaintiff re-alleges and incorporates all preceding factual paragraphs

as though fully set forth herein.

235.   As a condition of obtaining services from Defendant, Plaintiff and

Class Members gave Defendant their Personal Information and PHI in confidence,

believing that Defendant would protect that information. Plaintiff and Class Members would not have provided Defendant with this information had they known their information would not be adequately protected. Defendant's acceptance and storage of Plaintiff and Class Members' Personal Information and PHI created a fiduciary relationship between Defendant and Plaintiff and Class Members. In light of this relationship, Defendant must act primarily for the benefit of its customers, which includes safeguarding and protecting Plaintiff and Class Members' Personal Information and PHI. Defendant has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of their relationship.

236.    Defendant breached that duty by failing to properly protect the integrity of the systems containing Plaintiff and Class Members' Personal Information and PHI, failing to comply with the data security guidelines set forth by HIPAA, and otherwise failing to safeguard Plaintiff and Class Members' Personal Information and PHI that it collected, retained, and stored.

237.    As a direct and proximate result of Defendant's breach of its fiduciary duty, Plaintiff and Class Members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic

harm; loss of the value of their privacy and the confidentiality of the stolen

Personal Information; illegal sale of the compromised Personal Information

on the black market; mitigation expenses and time spent on credit monitoring,

identity theft insurance, and credit freezes and unfreezes; time spent in response

to the Data Breach reviewing bank statements, credit card statements, and credit

reports, among other related activities; expenses and time spent initiating fraud

alerts; decreased credit scores and ratings; lost work time; lost value of the

Personal Information; lost value of access to their Personal Information permitted

by CHA; the amount of the actuarial present value of ongoing high-quality

identity defense and credit monitoring services made necessary as mitigation

measures because of Defendant's Data Breach; and lost benefit of their bargains

and overcharges for services or products.

## COUNT SEVEN
## DECLARATORY RELIEF
## (On Behalf of Plaintiff and the Class)

238.    Plaintiff re-alleges and incorporates all preceding factual paragraphs

as though fully set forth herein.

239.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, this Court is

authorized to enter a judgment declaring the rights and legal relations of the parties

and grant further necessary relief. The Court has broad authority to restrain acts,

such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

240.    An actual controversy has arisen in the wake of the Defendant's Data Breach regarding its present and prospective common law and other duties to reasonably safeguard its customers' Personal Information and whether Defendant is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their Personal Information. Plaintiff and Class Members continue to suffer injury as a result of the compromise of their Personal Information and remain at imminent risk that further compromises of their Personal Information will occur in the future given the publicity around the Data Breach and the nature and quantity of the Personal Information stored by Defendant.

241.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things: (i) Defendant continues to owe a legal duty to secure consumers' Personal Information and to timely notify consumers of a data breach under the common law, Section 5 of the FTC Act, and various state statutes; and (ii) Defendant continues to breach this legal duty by failing to employ reasonable measures to secure consumers' Personal Information.

242.    The Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols

consistent with law and industry standards to protect consumers' Personal Information.

243.    If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendant. The risk of another such breach is real, immediate, and substantial. If another data breach with Defendant occurs, Plaintiff and Class Members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

244.    The hardship to Plaintiff and Class Members, if an injunction does not issue, exceeds the hardship to Defendant if an injunction is issued. Among other things, if another massive data breach occurs with Defendant, Plaintiff and Class Members will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

245.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach with Defendant, thus eliminating the additional

injuries that would result to Plaintiff and Class Members and the thousands of patients whose confidential information would be further compromised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all Class Members, requests judgment against Defendant and that the Court grant the following:

A.    For an Order certifying this action as a class action and appointing Plaintiff and her counsel to represent the Class;

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

C.    For injunctive relief requested by Plaintiff, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

    i.    prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    ii.   requiring Defendant to protect, including through encryption, all data collected through the course of its business in

accordance with all applicable regulations, industry standards, and federal, state, or local laws;

iii.   requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv.   requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Private Information of Plaintiff and Class Members;

v.   prohibiting Defendant from maintaining the Private Information of Plaintiff and Class Members on a cloud-based database;

vi.   requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii.    requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.    requiring Defendant to audit, test, and train their security personnel regarding any new or modified procedures; requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

ix.    requiring Defendant to conduct regular database scanning and securing checks;

x.    requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xi.    requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to

inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xii.   requiring Defendant to implement a system of tests to assess their respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiii.   requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xiv.   requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

     xv.    requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and

    xvi.    for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D.    For an award of actual damages, compensatory damages, and nominal damages, in an amount to be determined, and for punitive damages, as allowable by law;

E.    For an award of attorneys' fees and costs, and any other expenses, including expert witness fees;

F.    Pre- and post-judgment interest on any amounts awarded; and

G.    Such other and further relief as this court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.


Dated: October 30, 2025       Respectfully submitted,

*/s/ J. Devlan Geddes*
J. Devlan Geddes
Cameron Clevidence
**GOETZ, GEDDES & GARDNER, P.C.**
35 N. Grand Ave.
P.O. Box 6580
Bozeman, MT 59771
devlan@goetzlawfirm.com
cclevidence@goetzlawfirm.com


*/s/ Raph Graybill*
Raph Graybill
Rachel Parker
**GRAYBILL LAW FIRM, P.C.**
300 4th Street North
Great Falls, MT 59403
(406) 452-8566
raph@graybilllawfirm.com
rachel@graybilllawfirm.com


*/s/ John Heenan*
John Heenan
**HEENAN & COOK**
1631 Zimmerman Trail
Billings, MT 59102
Telephone: 406-839-9091
john@lawmontana.com


*/s/ David R. Paoli*
David R. Paoli
**PAOLI LAW FIRM, PC**
257 West Front St. Ste. A
Missoula, MT 59802
(406) 542-3330
davidpaoli@paoli-law.com


***Counsel for Plaintiff and the Putative
Class***